1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10                                 ----oo0oo----

11

12   UNITED STATES OF AMERICA
                                          NO. CR.  2:05-306 WBS
13              Plaintiff/Respondent,
                                          ORDER RE: MOTION FOR RELEASE
          v.                              PENDING APPEAL
14
     SUNDEEP DHARNI,
15
                Defendant/Petitioner.
16
17   _____/

18                                 ----oo0oo----

19        Defendant Sundeep Dharni previously filed a motion to

20   vacate, set aside, or correct his sentence pursuant to 28 U.S.C.

21   § 2255.  In a reasoned decision, Judge Garcia[1] denied defendant's

22   § 2255 motion and defendant appealed.  Defendant now seeks

23   release on bail pending his appeal.

24        Federal Rule of Appellate Procedure 23 "governs the

25   issue of the release or detention of a prisoner, state or

26   federal, who is collaterally attacking his or her criminal

27   _____

28        [1]   This case was reassigned to the undersigned due to
     Judge Garcia's retirement.

                                      1

1    conviction." <u>United States v. Mett</u>, 41 F.3d 1281, 1282 (9th Cir.

2    1994).  Rule 23(b) provides, "[w]hile a decision not to release a

3    prisoner is under review, the court or judge rendering the

4    decision . . . may order that the prisoner be . . . released on

5    personal recognizance, with or without surety."  Fed. R. App.

6    Proc. 23(b)(3).  "In the habeas context, [the Ninth Circuit] has

7    reserved bail for 'extraordinary cases involving special

8    circumstances or a high probability of success.'"  <u>Mett</u>, 41 F.3d

9    at 1282 (quoting <u>Land v. Deeds</u>, 878 F.2d 318, 318 (9th Cir.

10   1989)).

11        Defendant contends he is entitled to release pending

12   his appeal of the order denying his § 2255 motion because he has

13   a high probability of prevailing on his claim that the closure of

14   the courtroom during jury selection violated his Sixth Amendment

15   right to a public trial and that his trial counsel's failure to

16   object to the closure and his appellate counsel's failure to

17   raise the alleged violation on direct appeal violated his Sixth

18   Amendment right to effective assistance of counsel.

19        In <u>Presley v. Georgia</u>, 558 U.S. 209 (2010), the Supreme

20   Court held that the Sixth Amendment right to a public trial

21   extends to jury voir dire.  <u>Presley</u>, 558 U.S. 209, 130 S.Ct. 721,

22   723-24.  In denying defendant's § 2255 motion, Judge Garcia

23   concluded that defendant could not rely on <u>Presley</u> because that

24   case was decided three years after defendant's trial and the

25   Court did not indicate that the decision should apply

26   retroactively on collateral review.  (<u>See</u> Mar. 31, 2011 Order at

27   3-4 (Docket No. 150).)

28        While other lower district courts have adopted a view

2

1  similar to that expressed by Judge Garcia in his Order, (see id.

2  at 4:4-9 (citing four district court decisions from outside the

3  Ninth Circuit)), the Ninth Circuit has applied the holding from

4  Presley to a trial that occurred over a decade before Presley.

5  In United States v. Withers, 638 F.3d 1055 (9th Cir. 2011), the

6  defendant brought a § 2255 motion based on the trial court's

7  closure of the courtroom during voir dire for his 1998 trial.

8  Citing Presley, the Ninth Circuit stated, "The Sixth Amendment

9  guarantees a defendant the right to a public trial, which

10  includes a right to have the public present during voir dire."

11  Withers, 638 F.3d at 1063.  It therefore seems unlikely that

12  defendant's § 2255 motion will fail simply because Presley was

13  decided three years after his trial.[2]

14      Nonetheless, the exclusion of the public during voir

15  dire violates the Sixth Amendment only if the district court

16  "totally closes the courtroom to the public, for a non-trivial

17  duration, without first complying with the four requirements

18  established by the Supreme Court's Press-Enterprise and Waller

19  decisions."  Id.[3]  "'To determine whether a closure was too

20

21      [2]   The majority in Presley also suggested that its holding
22  that a defendant's Sixth Amendment right to a public trial
    extends to voir dire was well settled at the time the Court
23  decided Presley.  See Presley, 130 S.Ct. at 723-24 (concluding
    that "it is so well settled that the Sixth Amendment right
24  extends to jury voir dire that th[e] Court may proceed by summary
    disposition"); id. at 726 (arguing that prior cases did not
25  "expressly answer[] the question" and thus the majority should
    not have disposed of the case summarily) (Thomas, J.,
26  dissenting).

27      [3]   The four requirements from Press-Enterprise Co. v.
    Superior Court, 464 U.S. 501 (1984), and Waller v. Georgia, 467
28  U.S. 39 (1984), are:

                                3

trivial to implicate the Sixth Amendment guarantee, [the court] must determine whether the closure involved the values that the right to a public trial serves.'" <u>United States v. Rivera</u>, 682 F.3d 1223, 1229 (9th Cir. 2012) (quoting <u>United States v. Ivester</u>, 316 F.3d 955, 960 (9th Cir. 2003)).  "Those values . . . include: ensuring fair proceedings; reminding the prosecutor and judge of their grave responsibilities; discouraging perjury; and encouraging witnesses to come forward."  <u>Id.</u>  "The third and fourth values . . . are not implicated by voir dire because no witnesses testified."  <u>Gibbons v. Savage</u>, 555 F.3d 112, 121 (2d Cir. 2009).

Judge Garcia relied on <u>Gibbons</u> in concluding that the closure of the courtroom during voir dire in this case was trivial.  In <u>Gibbons</u>, jury selection lasted "several days" and the district judge closed the courtroom only for the first afternoon.  <u>Gibbons</u>, 555 F.3d at 114.  After that afternoon, the courtroom was reopened because the dismissal of potential jurors had provided for additional seating.  <u>Id.</u> at 114-15.  In

---

"[1] [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."

<u>Presley</u>, 130 S.Ct. at 724 (quoting <u>Waller</u>, 467 U.S. at 48) (second alteration in original).  With respect to the third requirement, the Court has explained that the trial court must consider alternatives to closure even if the parties fail to suggest alternatives.  <u>Id.</u> at 724.  Here, nothing in the record suggests that Judge Garcia considered reasonable alternatives to closing the courtroom during voir dire, such as utilizing the courthouse's larger courtroom or "dividing the jury venire panel to reduce courtroom congestion," <u>id.</u> at 725.

4

concluding that the closure for a single afternoon of a several day voir dire was trivial, the Second Circuit explained that no prospective jurors were excused without the consent of both parties, no peremptory challenges or objections were made, and the defendant's mother would not have been able to watch "a significant portion of what occurred during that afternoon session" because the judge had conducted private interviews of some jurors.  Id. at 121.

Most recently, in United States v. Santos, Nos. 09-10332, 09-10334, 09-10335, 09-10374, 2012 WL 6599339 (9th Cir. Dec. 18, 2012), the Ninth Circuit concluded that the defendants could not prevail in establishing a Sixth Amendment violation because they  failed to make "the requisite showing of an affirmative courtroom closure for a non-trivial duration." Santos, 2012 WL 6599339, at *2.  The court emphasized that the "closure occurred not because of an affirmative court order, but because the large pool of prospective jurors occupied every available seat in the small courtroom, at least during the first day of voir dire." Id.  The court also found it significant that the closure was limited to jury selection, "which occurred over the afternoon of one day and the morning of the next."  Id.

Based on the circumstances in Santos, the Ninth Circuit found that "nothing in the record suggest[ed] that closure led to any unfairness in the jury selection or deviation from established procedures, affected the public interest in the administration of justice, or somehow made the jurors less attuned to their sense of responsibility or the importance of their function." Id. at *1.  The court concluded that the

5

defendants had "not met their burden of demonstrating that the closure was non-trivial." Id. at *2.  Judge Smith, however, disagreed with the majority, stating, "A courtroom closure that lasts for the entire jury selection process cannot be deemed trivial."  Id. at *3 (Smith, J., concurring in part and dissenting in part).

Here, Judge Garcia had convened "a larger than usual" panel of prospective jurors for defendant's trial because the trial was scheduled to commence before and continue beyond the July 4 holiday.  (Mar. 31, 2011 Order at 2:15-17.)  In asking members of the public to exit the courtroom because the jury panel necessitated use of the available seating, Judge Garcia explained the reason for the closure and indicated that the public could re-enter once seats became available:

> "As soon as the jury comes up, I'm going to ask all family members to go out in the hall.  We need every seat in the audience section of the courtroom as we called in extra jurors because of the vacation problem.  So that during jury selection, all of the family and friends of the defendant and any other spectators that are out there will wait out in the hall during jury selection until seats open up."

(Id. at 2:18-22 (quoting Reporters Transcript Vol. 1 at 18).) Jury selection was completed in less than one-and-a-half hours and neither party made any objections during the process, but both parties exercised peremptory challenges.  (Id. at 5:1-11.) While the closure was initiated by the judge, it was limited to the duration of a relatively quick voir dire in which there were "no significant developments."  (Id. at 5:10-11.)

In this matter, a highly respected and experienced trial judge concluded that "[j]ury selection in the instant case

consisted of routine jury administrative matters that had no

bearing on defendant's ultimate guilt or innocence" and was "too

trivial to warrant relief." (Id. at 5:16-18, 6:2-4.)   Although

defendant's present attorney makes a forceful argument to the

contrary, this court cannot find that defendant's argument has a

"high probability of success" on appeal.   See Mett, 41 F.3d at

1282.   In the final analysis, whether defendant is entitled to

the relief sought is a fact specific question to which neither

Gibbons nor Santos provides a definitive answer.   At best,

defendant's attorney has demonstrated that reasonable minds can

differ on the question.

Because this court cannot conclude that defendant has

demonstrated a high probability of establishing a Sixth Amendment

violation on appeal, IT IS HEREBY ORDERED that defendant's motion

for release on bail pending appeal pursuant to Rule 23(b) be, and

the same hereby is, DENIED.[4]

DATED:  January 23, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4]     Because the court finds that defendant is not entitled to release under Rule 23(b), the court need not address the United States' argument that defendant procedurally defaulted. The court notes that Judge Garcia previously stated that, "[i]n light of United States v. Withers, 638 F.3d 1055 (9th Cir. 2011), it appears defendant could overcome the procedural default." (Mar. 31, 2011 Order at 2 n.1.)
        The court also need not address the merits of defendant's claims of ineffective assistance counsel because that claim relates to the governments procedural default argument and is tied to the merits of the alleged Sixth Amendment public trial violation.  (See Def.'s Mem. at 16-18 (arguing that he was denied effective assistance of counsel when his trial counsel failed to object to the exclusion of the public from jury selection and his appellate counsel failed to raise the issue on direct appeal).)